**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------- x
CHANDRA CATES, *individually and as* :
*representative of a class of participants and* :
*beneficiaries of the Retirement Plan for Officers of* :
*Columbia University, and the Columbia University* :
*Voluntary Retirement Savings Plan*, et al., :
:
                       Plaintiffs, :
:
      -against- :
:
THE TRUSTEES OF COLUMBIA UNIVERSITY :
IN THE CITY OF NEW YORK, *better known as* :
*Columbia University*, :
:
                       Defendant. :
------------------------------------- x



MEMORANDUM DECISION
AND ORDER

16 Civ. 6524 (GBD) (SDA)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs, a class of employees and former employees of Columbia University, who participated in the Retirement Plan for Officers of Columbia University ("Officers Plan") and the Columbia University Voluntary Retirement Savings Plan ("VRSP") (together, the "Plans") under the Columbia University Retirement Savings Program, bring this action against Defendant Trustees of Columbia University in the City of New York (the "Trustees") for breach of fiduciary duty of prudence pursuant to the Employee Retirement Income Savings Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a). (Consol. Compl. ¶¶ 1–2.) Specifically, Plaintiffs allege that Defendant imprudently incurred excessive administrative fees relating to recordkeeping and failed to prudently select and evaluate investment options for the Plans, which resulted in significant losses. (*Id.* ¶¶ 220–28, 234–47.)

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Def.'s Notice of Mot. for Summ. J., ECF No. 260.) Defendant also moves to exclude Plaintiffs' experts Ty Minnich, Al Otto, Wendy Dominguez, and Gerald Buetow. (Def.'s Notice of Mot. to

Exclude Pls.' Expert Ty Minnich, ECF No. 251; Def.'s Notice of Mot. to Exclude Pls.' Expert Al Otto, ECF No. 254; Def.'s Notice of Mot. to Exclude Pls.' Experts Wendy Dominguez and Gerald Buetow, ECF No. 257.)

Before this Court is Magistrate Judge Stewart D. Aaron's October 25, 2019 Report and Recommendation (the "Report"), recommending that Defendant's motion for summary judgment, as well as Defendant's motions to exclude certain of Plaintiffs' experts be denied. (Report, ECF No. 349, at 1.) Magistrate Judge Aaron advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 30.) Defendant filed timely objections on December 9, 2019. (Def.'s Objs. to the Mag. J.'s R. & R. Respecting Dispositive Mots. ("Def.'s Objs."), ECF No. 352.) Having reviewed Magistrate Judge Aaron's Report, as well as Defendant's objections, Plaintiffs' responses, and Defendant's reply, this Court ADOPTS the Report in full and OVERRULES Defendant's objections.

## I. FACTUAL BACKGROUND

### A. The Parties and the Plans.

Plaintiffs are employees or former employees of Columbia who were participants in the Officers Plans and VRSP, both of which are Columbia-sponsored defined contribution plans organized under Section 403(b) of the Internal Revenue Code, 26 U.S.C. § 403(b). (Pls.' Resp. to Def.'s Rule 56.1 Statement and Counterstatement of Undisputed Material Facts ("Pls.' Counter 56.1"), ECF No. 294, ¶¶ 1, 8.) The Officers Plan provides retirement benefits to Columbia faculty and staff. (*Id.* ¶ 14.) As of December 31, 2017, the Officers Plan had 29,775 participants and $3.5 billion in net assets. (*Id.*) The VRSP provides Columbia employees with the option to save on their own for retirement on a tax-deferred basis. (*Id.* ¶ 15.) As of December 31, 2017, the VRSP had 25,664 participants and $2.5 billion in net assets. (*Id.*)

2

The plan administrator for both the Officers Plans and the VRSP was Columbia's Vice President for Human Resources ("VP of HR"), a role that was served by different individuals during the class period. (*Id.* ¶ 18.) Before 2012, the Board of Trustees appointed a Retirement Committee, which was given "general authority to interpret the Plan[s] and make any necessary rules for [their] administration." (Decl. of Brantley Webb ("Webb Decl.), Ex. 12 (Retirement Plan for Officers of Columbia University), ECF No. 265-9, at 129155; Webb Decl., Ex. 14 (Columbia University Voluntary Retirement Savings Plan), ECF No. 266-1, at 1461.) In June 2012, the Board of Trustees formed a three-member Investment Advisory Committee ("IAC").[1] (Pls.' Counter 56.1 ¶ 20) The Board of Trustees delegated to the IAC discretionary authority and power to control and manage the assets of the Plans and to carry out its duties and responsibilities as detailed in the Plans. (Def.'s Reply to Pls.' Rule 56.1 Resp. and Counterstatement of Facts, ECF No. 315, ¶ 21.)

## B. Investment Menu.

The Plans offered an identical investment menu that included 116 investment options. (Consol. Compl. ¶ 101.) Among such options were fixed dollar annuities issued by the Teachers' Insurance Annuity Association ("TIAA"), the TIAA Real Estate Account, several College Retirement Equities Fund ("CREF") variable annuities, as well as various registered investment companies offered by TIAA-CREF, Vanguard Fiduciary Trust Company ("Vanguard"), and Calvert Trust Company ("Calvert"). (*Id.*) Participants had the right to put all of the contributions made on their behalf into one or more of those investment options. (Pls.' Counter 56.1 ¶ 8.) As of

---

[1] The Board of Trustees appointed three members to the IAC: (1) Vice Provost, Roxie Smith; (2) Executive Vice President for Finance, Anne Sullivan; and (3) Senior Vice President and Chief Financial Officer of Columbia University Medical Center, Joanne Quan. (Pls.' Counter 56.1 ¶ 20.) The Chair of the IAC was Sullivan. (*Id.*)

3

October 31, 2010, $2,604,789,925 in participant assets were invested in TIAA, $744,302,057 were invested in Vanguard, and $24,527,025 were invested in Calvert. (*Id.* ¶56.)

## C. Recordkeeping Services and Fees.

At the outset of the class period, TIAA, Vanguard, and Calvert each provided recordkeeping and administrative services to the Plans for their own investment products. (Pls.' Counter 56.1 ¶¶ 23, 47; Consol. Compl. ¶ 111.) The services provided by TIAA and Vanguard differed and included "core" recordkeeping services and assorted administrative services. (Pls.' Counter 56.1 ¶ 26.) TIAA and Vanguard were compensated through revenue sharing. (*Id.* ¶ 31.) In 2013, the Calvert funds were consolidated onto TIAA's recordkeeping platform. (*Id.* ¶ 50.) Subsequently, TIAA and Vanguard became the two remaining recordkeepers of the Plans. (*Id.*)

## II. LEGAL STANDARDS

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original

4

briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## B. Rule 56 Motion for Summary Judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (explaining that the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial"). To do so, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)) (internal quotation marks omitted). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First*

*Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all reasonable inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation and internal quotation marks omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### C. Duty of Prudence Under ERISA.

ERISA is a remedial statute designed to promote and protect the interests of plan participants and beneficiaries. *Burgio & Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007 (2d Cir. 1997). Under ERISA, the duties owed by fiduciaries to plan participants and beneficiaries "are those of trustees of an express trust—the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 n.8 (2d Cir. 1982). Section 404 sets forth the general obligations of an ERISA fiduciary, which include the general duties of loyalty and prudence that are firmly rooted in the common law of trusts. *See Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570–71 (1985) ("The manner in which trustee powers may be exercised . . . is further defined in the statute through the provision of strict standards of trustee conduct, also derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care."); *see also* 29 U.S.C. § 1104(a)(1)(A)–(B).

6

The duty of care requires a fiduciary to act with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "In determining whether a fiduciary has satisfied this requirement, '[t]he court's task is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)) (alteration in original). Courts assess the duty of prudence under an objective standard, and a fiduciary's "lack of familiarity with investments is no excuse" for failing to act with the care, skill, prudence and diligence required under the circumstances then prevailing. *Katsaros*, 744 F.2d at 279.

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936 (LGS), 2018 WL 2727880, at *3 (S.D.N.Y. June 6, 2018) (citation omitted).

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS DENIED

### A. Recordkeeping Fee Claim.

Magistrate Judge Aaron correctly found that genuine issues of fact exist as to whether Columbia acted imprudently with respect to recordkeeping fees and whether such breach, if any, caused a loss to the Plans. Plaintiffs assert that Columbia breached its duty of prudence concerning recordkeeping fees by failing to: (1) analyze or negotiate recordkeeping fees on a per participant basis; (2) conduct competitive bidding for the Plans' recordkeeper; and (3) consolidate to a single recordkeeper—all of which resulted in excessive recordkeeping fees. (Mem. of Law in Opp'n to

7

Def.'s Mot. for Summ. J. ("Pls.' Summ. J. Opp'n"), ECF No. 293, at 3–6, 11–18; Consol. Compl. ¶¶ 223, 225.)

First, Magistrate Judge Aaron properly determined that there are genuine issues of material fact as to whether Columbia undertook an appropriate process to evaluate recordkeeper consolidation, and whether its decision not to consolidate to a single recordkeeper was prudent under the circumstances. (*See* Report at 14–17.) Specifically, as Magistrate Judge Aaron appropriately found, "there is at least a genuine issue of material fact as to whether it was imprudent not to consolidate with TIAA." (*Id.* at 16.) He accurately noted that "[p]laintiffs have adduced evidence that consolidation to TIAA as the sole recordkeeper could have lowered Columbia's recordkeeping fees" on the basis of evidence in the record—namely, *inter alia*, a 2014 presentation and a 2018 pricing proposal given by TIAA to Columbia. (*See id.* ("TIAA gave a presentation to Columbia . . . in which it discussed the potential benefits and showed that, if Columbia consolidated to TIAA as the sole recordkeeper, TIAA would reduce the cost by a significant amount per participant.").) Further, Magistrate Judge Aaron properly found that "there is a genuine issue of material fact as to whether Columbia could have consolidated with any recordkeeping provider other than TIAA." (*Id.*) Defendant asserts that it could not have been required to consolidate recordkeeping with any other vendor besides TIAA given that TIAA annuities could only be recordkept by TIAA and that TIAA annuity assets have not previously been mapped onto other investments. Although Plaintiffs have not located a recordkeeper that could have recordkept TIAA annuities, Plaintiffs' contention that TIAA annuity assets could have been mapped onto other investments is sufficient to create a disputed question of fact. In particular, in support of such proposition, Plaintiffs point to testimony from Glenn Poehler that if TIAA annuity assets could be mapped onto other investments, a reasonable fee for the Plans would be

8

lower than the Vanguard fees, as well as testimony from a TIAA corporate representative that he could not identify any provision in the annuity contract that forbade mapping. (*See* Pls.' Counter 56.1 ¶ 53, 55, 229.)

Second, Magistrate Judge Aaron properly found that there exist "genuine issues of material fact as to whether Columbia breached its duty of [prudence] and caused a loss to the Plans by not conducting competitive bidding earlier in the class period." (Report at 19.) In particular, as Magistrate Aaron correctly pointed out, Plaintiffs have proffered sufficient evidence that Columbia paid excessive fees due to its failure to conduct a request-for-proposal ("RFP") process in or after the beginning of the class period. (*Id.* at 18–19.) Among other things, the record contains evidence that in late-2017 to early-2018 when Columbia conducted an RFI, TIAA reduced its fee by more than 50% per participant and Vanguard reduced its fee by over 25% per participant. (Pls.' Counter 56.1 ¶ 75.) According to Plaintiffs, Columbia could have achieved a similar result by engaging in competitive bidding earlier. (Pls.' Summ. J. Opp'n at 4.)

Finally, Magistrate Judge Aaron appropriately determined that Plaintiffs bear the burden of establishing some causal link between the alleged breach and the losses to the Plans they seek to recover. (Report at 21 (internal citations omitted).) A panel majority of the Second Circuit found that "[c]ausation of damages is . . . an element of the [Section 409(a)] claim, and the plaintiff bears the burden of proving it." *Silverman v. Mutual Benefit Life Insurance Co.*, 138 F.3d 98, 105 (2d Cir. 1998) (Jacobs, J., concurring). Magistrate Judge Aaron then correctly found that Plaintiffs have adduced evidence from which a reasonable jury could find that Defendant's alleged breaches caused a loss to the Plans. (Report at 21.) Notably, "Plaintiffs have cited evidence that Columbia could have lowered its recordkeeping fees through consolidation or competitive bidding . . . [and] that, once Columbia began negotiating its fee arrangements, it did achieve reductions." (*Id.*)

9

Further, Plaintiffs have presented other evidence—including, *inter alia*, benchmarking performed by Columbia's advisors and TIAA pricing data—to make their recordkeeping fee claim a genuine issue for trial. Accordingly, Columbia's motion for summary judgment is denied as to Plaintiffs' recordkeeping claim. Indeed, Magistrate Judge Aaron properly recommended that this Court deny Columbia's motion for summary judgment as to the recordkeeping claim.

## B. Investment Monitoring Claim.

Magistrate Judge Aaron appropriately found that genuine issues of fact exist as to Plaintiffs' investment monitoring claim. Plaintiffs claim that Columbia breached its fiduciary duty by failing to monitor and remove certain investment options—including, the CREF Stock Account and the TIAA Real Estate Account—despite excessive fees and poor performance. (Consol. Compl. ¶¶ 238–44.) Defendant argues that "Plaintiffs have failed to adduce any probative evidence as to the objective prudence of the challenged investment options[.]" (Mem. of Law in Supp. of Def.'s Mot. for Summ. J., ECF No. 262, at 15; *see also* Def.'s 56.1 ¶ 93.) As Magistrate Judge Aaron correctly determined, there are questions of fact as to the appropriate benchmark for assessing the performance of the CREF Stock Account and the TIAA Real Estate Account, and whether they "were underperforming as of September 2010, when Plaintiffs contend they should have been removed, or at some later point during the class period." (Report at 26.) In addition, "there are questions of fact as to whether a prudent fiduciary would have removed the investments, and when, based on the alleged underperformance." (*Id.*) Indeed, Plaintiffs have proffered ample evidence for a jury to find that a prudent fiduciary would have removed the investments at an earlier date. (*See, e.g., id.* at 26–27 (highlighting evidence in the record that Defendant was made aware of underperforming investments).) Thus, Magistrate Judge Aaron reasonably recommended that Defendant's motion for summary judgment as to Plaintiffs' investment monitoring claim be denied.

10

## IV. DEFENDANT'S MOTIONS TO EXCLUDE CERTAIN OF PLAINTIFFS' EXPERTS ARE DENIED

Courts may make evidentiary determinations, including determinations of the admissibility of expert testimony, on a motion for summary judgment. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 incorporates the principles enunciated in both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), which collectively held that trial courts have a "gatekeeping" function to ensure that not only scientific testimony, but any testimony based on technical or other specialized knowledge, is both relevant and reliable. *See Tchatat v. City of New York*, 315 F.R.D. 441, 443–44 (S.D.N.Y. 2016).

In determining whether the proffered testimony is sufficiently reliable, "the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702).

The party seeking to introduce the expert testimony bears the burden of establishing by a preponderance of the evidence that the proffered testimony is admissible. *Daubert*, 509 U.S. at 592. There is a presumption that expert testimony is admissible, *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995), and "the rejection of [such] testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Where there is "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method . . . an expert's opinion [is not] *per se* inadmissible." *Amorgianos*, 303 F.3d at 267. "Disputes as to the strength of [an expert's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (citation omitted).

Magistrate Judge Aaron appropriately recommended that Defendant's motion to exclude Plaintiffs' experts Minnich and Otto with respect to recordkeeping fees be denied. Magistrate Judge Aaron accurately found that "any decision to exclude Plaintiffs' experts is more properly made by [this Court] at or after trial." (Report at 24.) Indeed, as Magistrate Judge Aaron appropriately noted, any defects that Defendant contends exist in the opinions offered by Plaintiffs' experts go to the weight, not the admissibility of their testimony. As such, Magistrate Judge Aaron properly recommended that Defendant's motion to exclude Plaintiffs' experts Minnich and Otto with respect to recordkeeping fees be denied.

With respect to Plaintiffs' experts regarding investment monitoring claim, Magistrate Judge Aaron properly held that Defendant's motion to exclude Plaintiffs' expert Dominguez and Buetow be denied. Particularly, although Defendant finds various flaws in the process used by Dominguez in arriving at her opinion, those flaws go to the weight, not its admissibility, of Dominguez's opinion. Accordingly, Magistrate Judge Aaron correctly recommended that

12

Defendant's motion to exclude Plaintiffs' experts Dominguez and Buetow regarding investment monitoring be denied.

## V. CONCLUSION

Defendant's objections are OVERRULED. Magistrate Judge Aaron's Report is ADOPTED. Defendant's motion for summary judgment, (ECF No. 260), is DENIED. Defendant's motions to exclude certain of Plaintiffs' experts, (ECF Nos. 251, 254, 257), are DENIED without prejudice. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
March 30, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge