**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| CHANDRA CATES, et al., |
| *Plaintiffs,* |
| v. |
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, |
| *Defendant.* |

No. 1:16-cv-06524-GBD

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Table of Contents

BACKGROUND ............................................................................................................... 1

   I.   The claims in this action. ........................................................................................ 1

   II.  The terms of the proposed settlement. .................................................................... 3

      A.  Monetary Relief. ............................................................................................... 4

      B.  Non-Monetary Terms. ...................................................................................... 4

      C.  Notice and Class Representatives' Compensation. .......................................... 6

      D.  Attorneys' Fees and Costs. ............................................................................... 7

ARGUMENT .................................................................................................................... 8

   I.   The settlement is the product of arm's length negotiations conducted by experienced counsel after extensive litigation. ........................................................................... 9

      A.  The settlement was reached after extended litigation and significant investigation of the claims asserted by Plaintiffs. ........................................................................... 10

      B.  Class Counsel is highly experienced and capable. ........................................ 10

   II.  The Settlement is substantively reasonable. ......................................................... 11

   III.  This fair, reasonable, and adequate settlement warrants sending notice to the Class. ... 12

CONCLUSION ............................................................................................................... 14

Table of Authorities

**Cases**

*Abbott v. Lockheed Martin Corp.*,

No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015), ......................................... 7, 10

*Agonath v. Interstate Home Loans Ctr., Inc.*,

No. 17-5267-JS-SIL, 2019 WL 1060627, at *7 (E.D.N.Y. Mar. 6, 2019) .............................. 13

*Arbuthnot v. Pierson*,

607 F. App'x 73 (2d Cir. 2015) ............................................................................................. 9

*Berkson v. Gogo LLC*,

147 F. Supp. 3d 123, 139 (E.D.N.Y. 2015) ........................................................................... 13

*Cassell v. Vanderbilt Univ.*,

No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019)........................................................... 7, 12

*City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974)................................... 9, 12

*City of Providence v. Aeropostale, Inc.*,

No. 11-712-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014)............................ 9

*Clark v. Duke*,

No. 16-1044, 2019 WL 2579201, at *3–4 (M.D.N.C. June 24, 2019) ......................... 7, 11, 12

*Dial Corp. v. News Corp.*,

317 F.R.D. 426, 439 (S.D.N.Y. 2016) ................................................................................... 7

*Dornberger v. Metro. Life Ins. Co.*,

203 F.R.D. 118, 125 (S.D.N.Y. 2001) ................................................................................... 7

*Eisen v. Carlisle and Jacquelin*,

417 U.S. 156, 175 (1974)....................................................................................................... 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,

No. 05 CIV. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ........................ 8

*Goldberger v. Integrated Res., Inc.*,

209 F.3d 43 (2d Cir. 2000)...................................................................................................... 9

*Henderson v. Emory University*,

No. 16-cv-2920 (N.D. Ga. 2020) ........................................................................................... 12

*In re Michael Milken and Assocs. Secs. Litig.*,

150 F.R.D. 57, 66 (S.D.N.Y 1993) ........................................................................................ 10

*In re Northrop Grumman Corp. ERISA Litig.*,

    No. 06-6213, 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017)...........................................11

*In re Platinum & Palladium Commod. Litig.*, No. 10-3617-WHP, 2014 WL 3500655, at *11

    (S.D.N.Y. July 15, 2014) ...........................................................................................................8

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*,

    310 F.R.D. 300, 318 (E.D. La. 2015)......................................................................................13

*Kelly v. Johns Hopkins Univ.*,

    No. 16-2835, 2020 WL 434473, at *3 (D. Md. Jan. 20, 2020)......................................7, 11, 12

*Krueger v. Ameriprise Fin., Inc.*,

    No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) ...........................................10

*Nolte v. Cigna Corp.*,

    No. 07-2046, 2013 WL 12242015, at *2–3 (C.D. Ill Oct. 15, 2013)........................................10

*Sanchez v. Salsa Con Fuego, Inc.*,

    No. 16-473-RJS-BCM, 2016 WL 4533574, at *5–6 (S.D.N.Y. Aug. 24, 2016).....................13

*Sweda v. University of Pennsylvania*,

    No. 16-cv-4329 (E.D. Pa. 2020) ..............................................................................................12

*Tibble v. Edison, Int'l*,

    575 U.S. 523, 135 S. Ct. 1823 (2015)........................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

    396 F.3d 96, 116 (2d Cir. 2005).................................................................................................9

**Statutes**

29 U.S.C. § 1104.............................................................................................................................2

29 U.S.C. § 1109(a) .......................................................................................................................2

**Rules**

Fed. R. Civ. P 23(c)(2)(B) ...........................................................................................................13

Fed. R. Civ. P. 23(e)(1).................................................................................................................8

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................................8

Fed. R. Civ. P. 23(e)(2).................................................................................................................8

Plaintiffs move for the Court's preliminary approval of a settlement of the remaining claims currently set for trial. Plaintiffs allege that Defendant, the Trustees of Columbia University in the City of New York, breached their fiduciary duties and committed prohibited transactions under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing the Retirement Plan for Officers of Columbia University and the Columbia University Voluntary Retirement Savings Plan ("the Plans") to pay unreasonable recordkeeping and administrative fees and to maintain high-cost and underperforming investment options. ECF No. 76-1. Defendant disputes these allegations and denies liability for any alleged fiduciary breach.

After the Court denied summary judgment, ECF No. 349, *report and recommendation adopted*, ECF No. 361, Plaintiffs and Defendant engaged in arms-length settlement discussions, reaching an agreement to settle the remaining claims. Considering the litigation risks that further prosecution of the remaining claim would inevitably entail, Plaintiffs respectfully request that this Court: (1) preliminarily approve the proposed settlement; (2) approve the proposed form and method of notice to the Class; and (3) schedule a hearing at which the Court will consider final approval of the settlement.[1]

## BACKGROUND

### I.  The claims in this action.

On August 16, 2016, Jane Doe filed a complaint in the United District Court for the Southern District of New York (Case No. 16-cv-06488) on behalf of the Plans alleging breach of fiduciary duty and prohibited transactions under ERISA and seeking equitable relief. On August 17, 2016, Chandra Cates and Kelly Stuart filed a similar complaint on behalf of the Plans in the

---

[1] The capitalized terms used herein, to the extent not defined, shall have the meaning defined in the Settlement Agreement attached hereto as Exhibit A.

Southern District of New York (Case No. 16-cv-06524).[2]

On January 24, 2017, the Court consolidated the two actions. ECF No. 63. The operative complaint is the consolidated complaint filed on February 7, 2017 by Chandra Cates, Kelly Stuart, Harry L. Brown, Olga S. Carr, Phyllis E. Hulen, Dr. Saul Silverstein, William S. Valentine and Jane Doe against the following: The Trustees of Columbia University in the City of New York, Jeffery Scott, Lucinda During, Louis Bellardine, William L. Innes, Barbara Hough and Diane L. Kenney (the "Complaint").[3] ECF No. 76-1.

Plaintiffs alleged that Defendant breached its fiduciary duties and committed prohibited transactions relating to the management, operation, and administration of the Plans. Plaintiffs sought to recover all alleged losses to the Plans resulting from each breach of duty under 29 U.S.C. § 1109(a) and for other equitable and remedial relief.

On August 28, 2017, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' amended complaint. ECF No. 116. Following the Court's motion to dismiss order, Plaintiffs' remaining claims alleged Defendant violated ERISA 29 U.S.C. § 1104 by causing the Plans to pay excessive recordkeeping fees and including numerous imprudent investment options. *Id.* at 5. Defendant moved for partial reconsideration of that motion to dismiss order, which Plaintiffs opposed and which the Court denied. ECF No. 125.

The parties then proceeded to discovery. The parties submitted competing scheduling orders, ECF Nos. 128-1 and 128-2, a joint negotiated protective order, ECF No. 130-1, and a stipulation for discovery of hard copy documents and electronically stored information. ECF No. 132-1. The parties conducted extensive written discovery, with over 350,000 documents

---

[2] Doe subsequently voluntarily dismissed her claim. ECF No. 145.

[3] Columbia later agreed to accept responsibility for any breaches committed by the individual defendants, and the Parties stipulated to the individual defendants' dismissal. ECF No. 202.

produced by the parties or relevant third parties. These materials required extensive review by all

parties, particularly Class Counsel. All documents produced required close and detailed analysis

along with discussions with consultants and experts retained by Class Counsel. Decl. of Jerome

J. Schlichter ¶ 4. In total, the parties took the depositions of seven named Plaintiffs, ten

Columbia-affiliated witnesses, seven witnesses affiliated with service providers to the Plans, and

six expert witnesses. *Id*. ¶ 5.

On November 15, 2018, the Court certified Plaintiffs' lawsuit as a class action under

Federal Rule of Civil Procedure 23(b)(1), appointed Plaintiffs' undersigned attorneys as Class

Counsel, appointed Plaintiffs Cates, Stuart, Brown, Carr, Hulen, Silverstein, and Valentine as

Class Representatives, and defined the certified class as follows:

> All participants and beneficiaries of the Retirement Plan of the Officers of
> Columbia University and the Columbia University Voluntary Retirement
> Savings Plan from August 10, 2010, through the date of judgment,
> excluding the Defendants.

ECF No. 218.[4] On March 30, 2020, the Court denied Defendant's motion for summary judgment

and Defendant's motions to exclude Plaintiffs' expert witnesses. ECF No. 361. Plaintiffs continued

litigating the case after summary judgment, preparing all pretrial exchanges and fully preparing

for trial. The matter was set for a bench trial starting on April 12, 2021. ECF No. 382. On April 7,

2021, the parties jointly notified the Court that they had reached an agreement to settle the case on

a class-wide basis and requested a stay of all deadlines in the case. ECF No. 436. The Court granted

the motion the following day. ECF No. 437.

## II.     The terms of the proposed settlement.

In exchange for the dismissal of all of Plaintiffs' remaining claims, Defendant will make

---

[4] In order to effectuate the Settlement, the parties require an ending date for the Class
definition. The parties have chosen March 31, 2021 as the close of the Class period defining
those Plan participants and former participants who will be included in the Class.

available to Class members the benefits described below.

### A. Monetary Relief.

The Defendant will deposit $13,000,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the Class Member's recoveries, administrative expenses to facilitate the Settlement, Class Counsel's attorneys' fees and costs, and the Class Representatives' Compensation if awarded by the Court.

### B. Non-Monetary Terms.

In addition to the monetary component of the settlement, the Parties agreed to non-monetary terms in accordance with Article 10 of the Settlement Agreement. These terms include:

1.  A three-year Settlement Period, during which Defendant shall continue to provide annual training to the Plans' fiduciaries regarding their fiduciary duties under ERISA.

2.  Defendant agrees to continue the practice of negotiating fees on a per-participant or per-account basis.

3.  To the extent revenue sharing is received by the Plans' recordkeeping vendor(s), any amount collected in excess of the per-participant or per-account fee for recordkeeping and administrative services and not used to defray reasonable expenses of administering the Plans shall be rebated back to Plan participants. The Plans shall continue to allocate excess amounts to participants in a manner the Plan fiduciaries determine to be fair, equitable, and appropriate under the circumstances.

4.  Defendant or its agent or designee will inform all Plan participants, including those invested in the CREF Stock Account and the TIAA Real Estate Account, of their ability to redirect their assets held in any frozen investment options to investment options available in the updated investment menu.

5.  For designated investment options and specifically excluding any self-directed brokerage window, Defendant agrees to maintain the lowest available share class of Plan investments in annuities and mutual funds on its active lineup and to evaluate the need for additional share class transitions within a reasonable period of time.

6.  Defendant agrees to continue the practice of using an independent investment consultant to review the Plans' investments and make appropriate recommendations. Further, Defendant agrees that the Plans' Investment Advisory Committee shall continue to meet quarterly with the investment consultant to review the relevant information and make decisions on, among other things, any recommendations from the consultant.

7.  Defendant is in the course of negotiating revised contracts for recordkeeping and administrative services. Absent exigent circumstances and only with the consent of the independent consultant, Defendant agrees that before the end of the Settlement Period, it will initiate a request for proposal for the Plans' recordkeeping and administrative services.

8.  Defendant agrees to instruct the current recordkeeper(s) of the Plans in writing within ninety (90) calendar days of the Settlement Effective Date that, in performing contracted recordkeeping services (the "Services") with respect to the Plans, the recordkeeper shall not use information received as a result of providing the Services to the Plans and/or the Plans' participants to solicit the Plans' current participants for the purpose of cross-selling non-Plan products and services, including, but not limited to, Individual Retirement Accounts, non-Plan managed account services, life or disability insurance, investment products, and wealth management services, unless in

response to a request by a Plan participant. Nothing in this paragraph shall preclude Defendant from authorizing a Plan vendor to provide retirement planning services related to the participant's investments within the Plans and other assets identified by the participant.

**C. Notice and Class Representatives' Compensation.**

The costs to administer the settlement, including those associated with providing notice to the Class, will be paid from the Gross Settlement Amount. For the costs associated with the Independent Fiduciary and the Settlement Administrator, the parties have received competitive proposals from candidates to provide these services. After consideration of the proposed fees and the quality of the services to be provided by each candidate, an Independent Fiduciary will be agreed to by the parties. A Settlement Administrator will also be selected to provide notices electronically or by first class mail to each Class Member's physical or email address provided by Defendant's Counsel, Defendant, and/or the Plans' recordkeepers (or their designee(s)), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by to the Settlement Administrator.[5] Class Counsel also shall post a copy of the Settlement Notice on the Settlement Website, and a link to the Settlement Website will also appear on Class Counsel's website.

Plaintiffs will seek an incentive award of $25,000 for each of the named plaintiffs. This amount is consistent with precedent recognizing the value of individuals stepping forward to represent a class, particularly in contested complex litigation like this where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims, there are

---

[5] The proposed fee for the Settlement Administrator to provide notice to class members and other related services to facilitate the settlement is estimated based on information presently available to the parties and is subject to change once the number of class members is determined.

significant risks of no recovery, and risk of alienation from their employers and peers. *E.g.*, *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (approving incentive awards of $50,000 and noting that incentive awards "have generally ranged from $2,500 to $85,000"); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (similar).

### D.  Attorneys' Fees and Costs.

Class Counsel will request attorneys' fees paid out of the Gross Settlement Fund in an amount not more than one-third of the Gross Settlement Amount, or $4,333,333.33, as well as reimbursement for costs incurred of no more than $700,000. Class Counsel "pioneer[ed]" 401(k) excessive fee litigation as recognized by multiple federal judges, *e.g., Abbott v. Lockheed Martin Corp.,* No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015), and successfully handled the only ERISA excessive fee case taken by the Supreme Court, *Tibble v. Edison, Int'l*, 575 U.S. 523, 135 S. Ct. 1823 (2015). Class Counsel also filed the first 403(b) excessive fee cases in history, of which this case was one. Before Class Counsel filed both 401(k) cases and the 403(b) cases, no one had ever brought a case alleging excessive 401(k) or 403(b) fees. A contingent one-third fee for Class Counsel has been approved by other courts in settlements of complex ERISA excessive fee cases. *E.g.*, *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *3 (D. Md. Jan. 20, 2020) (collecting cases); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019); *Clark v. Duke*, No. 16-1044, 2019 WL 2579201, at *3–4 (M.D.N.C. June 24, 2019). It is also the rate contractually agreed to by the named Plaintiffs. Schlichter Decl. ¶7.

Although Class Counsel will not request a fee greater than one-third of the monetary recovery, the additional terms of the settlement provide meaningful value in addition to the monetary amount. This results in the requested fee being significantly lower than a one-third

award. In addition, Class Counsel will not seek attorneys' fees: (1) from the interest earned on

the Gross Settlement Amount; (2) for time associated with communicating with class members

or Defendant during the Settlement Period; and (3) for work required in future years to enforce

the settlement, if necessary. Class Counsel will submit a formal application for attorneys' fees

and costs and for the Class Representatives' incentive awards at least 30 days prior to the

deadline for class members to file objections to the settlement. As courts in this District have

held, "one-third of the common fund after deduction of legal costs . . . is consistent with the

norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 CIV. 3452

(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (citing cases). Thus, Plaintiffs' request

here is preliminarily reasonable.

**ARGUMENT**

Review of a proposed class action settlement is a two-step process. First, the court

performs a preliminary review of the terms of the proposed settlement to determine whether to

send notice to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is sent to the class and

a hearing is conducted, the Court determines whether to approve the settlement on a finding that

it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice to the class upon a finding

that it "will likely be able" to finally approve the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). In

considering preliminary approval, a court looks to both the "negotiation process leading up to the

settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.* substantive

fairness." *In re Platinum & Palladium Commod. Litig.*, No. 10-3617-WHP, 2014 WL 3500655,

at *11 (S.D.N.Y. July 15, 2014). The Court should grant preliminary approval in this matter

because the proposed settlement is procedurally and substantively fair, reasonable, and

8

adequate.[6]

## I.    The settlement is the product of arm's length negotiations conducted by experienced counsel after extensive litigation.

There is a strong initial presumption that a proposed class action settlement is fair and

reasonable when it is the result of arm's-length negotiations by experienced, capable counsel

after meaningful discovery. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.

2005) (settlement may be presumed to be fair where it is "reached in arm's-length negotiations

between experienced, capable counsel after meaningful discovery"); *City of Providence v.

Aeropostale, Inc.*, No. 11-712-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014)

("This initial presumption of fairness and adequacy applies here because the Settlement was

reached by experienced, fully-informed counsel after arm's-length negotiations."), *aff'd,

Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). The settlement is the result of lengthy and

complex arm's-length negotiations overseen by an experienced, outside mediator. *See* Schlichter

Decl. ¶2. Counsel on both sides are thoroughly familiar with the factual and legal issues

presented and highly experienced in this type of litigation. It is recognized that the opinion of

---

  [6] During the final approval phase, courts in the Second Circuit consider the following factors
set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448 (2d Cir. 1974) when evaluating
a class-action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceeding and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9) the range of reasonableness of the settlement fund to a possible recovery in light
> of all the attendant risks of litigation.

  *Id*. at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res.,
Inc.*, 209 F.3d 43 (2d Cir. 2000).

experienced and informed counsel supporting the settlement is entitled to considerable weight. *In re Michael Milken and Assocs. Secs. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y 1993) ("the view of experienced counsel favoring the settlement is entitled to great weight.") (citation and quotation marks omitted).

### A. The settlement was reached after extended litigation and significant investigation of the claims asserted by Plaintiffs.

At the time the settlement was reached, the parties had engaged in more than four years of litigation, including extensive document and deposition discovery and dispositive motion practice. Class Counsel extensively developed the facts and legal theories supporting their claims. They conducted a substantial investigation of their claims prior to the filing of the complaint. Thereafter, they completed fact and expert discovery. The parties vigorously litigated the case during all stages of litigation resulting in two remaining claims after multiple rounds of dispositive motion practice. Only after years of hard-fought litigation and months of arm's length negotiations were the parties able to reach an agreement to resolve the claims remaining to be tried in this lawsuit.

### B. Class Counsel is highly experienced and capable.

Class Counsel is not only highly experienced in handing ERISA class actions involving 401(k) and 403(b) plans, but "pioneer[ed]…the field of retirement plan litigation." *Abbott v. Lockheed Martin Corp.,* No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). Schlichter Bogard & Denton is the "preeminent firm" in excessive fee litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks." *Nolte v. Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at *2–3 (C.D. Ill Oct. 15, 2013). They are "experts in ERISA litigation," *Krueger v. Ameriprise Fin., Inc.,* No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (citation omitted), and "highly experienced." *In re*

10

*Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017).

District courts across the country have recognized the reputation, extraordinary skill and determination of Class Counsel. Recently, in similar cases against university 403(b) plan sponsors, Judge Catherine Eagles and Judge George L. Russell, III opined on Class Counsel's experience and competence. Judge Eagles noted that "these [ERISA] cases require a high level of skill on behalf of plaintiffs to achieve any recovery." *Clark*, ECF No. 165 at 6 (M.D.N.C. June 24, 2019). Judge Eagles concluded that "[Schlichter Bogard & Denton] has demonstrated diligence, skill, and determination in this matter and, more generally, in an area of law in which few attorneys and law firms are willing or capable of practicing." *Id.* at 7. Judge Russell noted that "Schlichter Bogard & Denton's work on behalf of participants in large 401(k) and 403(b) plans has significantly improved these plans, brought to light fiduciary misconduct that has detrimentally impacted the retirement savings of American workers, and dramatically brought down fees in defined contribution plans." *Kelly*, 2020 WL 434473, at *2. Judge Russell continued, "[w]ithout the unique and unparalleled foresight for this novel area of litigation by Schlichter, Bogard & Denton, the class would not have obtained any recovery for the alleged fiduciary breaches that affected the Johns Hopkins University 403(b) plan for years prior." *Id.* at *4.

## II.    The Settlement is substantively reasonable.

There were substantial risks in prosecuting this action, and further prosecution of this action to trial may have yielded limited or no recovery. Most of Plaintiffs' claimed damages arose from three individual annuities—CREF Stock, TIAA Real Estate, and CREF Growth—that Defendant argued could not be transferred or mapped by Defendant to different investments without each individual participant's consent. Plaintiffs disagreed and moved *in limine* to

exclude evidence and testimony that the assets held in those three annuities were not mappable, but the Court denied the motion, preserving the issue for trial. ECF No. 425. If the Court were to agree with Defendant's argument on this point at trial, as Judge Forrest did on the same issue in *Sacerdote v. New York University*, Plaintiffs' right to recovery would have been severely constrained. Instead, the settlement fund of $13,000,000 provides substantial recovery on Plaintiffs' claims. Considering the downside risk if Defendant's argument was accepted, and the inherent substantial risks of taking a complex case such as this one to trial, this settlement is clearly in the range of possible approval. *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also  Henderson v. Emory University*, No. 16-cv-2920 (N.D. Ga. 2020) ($16,750,000 settlement); *Sweda v. University of Pennsylvania*, No. 16-cv-4329 (E.D. Pa. 2020) ($13,000,000 settlement); *Cassell v. Vanderbilt University*, No. 16-cv-2086 (M.D. Tenn. 2019) ($14,500,000 settlement); *Kelly v. Johns Hopkins University*, No. 16-cv-2835 (D. Md. 2019) ($14,000,000 settlement); *Clark v. Duke University*, No. 16-cv-1044 (M.D.N.C. 2018) ($10,650,000 settlement).

## III.    This fair, reasonable, and adequate settlement warrants sending notice to the Class.

Under Rule 23(c)(2)(A) and (e)(1)(B), class notice for certification or settlement of a class certified under Rule 23(b)(1) needs to be "appropriate" or "in a reasonable manner." Due process and Rule 23(e) do not require that each Class Member receive notice, but they do require that the class notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974). Here, Class Counsel intends to serve notice

via email, or, if there is no email address on file or if the email is returned as undeliverable, via first class mail. Even under the more stringent requirements of Rule 23(c)(2)(B) for classes certified under Rule 23(b)(3), notice by email can be the "best notice that is practicable." Fed R. Civ. P 23(c)(2)(B) ("The notice may be by one or more of the following: . . . electronic means . . . ."); *see also, e.g., Berkson v. Gogo LLC,* 147 F. Supp. 3d 123, 139 (E.D.N.Y. 2015) (approving notice by email only); *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 318 (E.D. La. 2015) (approving notice by email only). District courts in the Second Circuit routinely recognize that email notice is reasonable and often more effective than traditional mail. *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-5267-JS-SIL, 2019 WL 1060627, at *7 (E.D.N.Y. Mar. 6, 2019) (collecting cases); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16-473-RJS-BCM, 2016 WL 4533574, at *5–6 (S.D.N.Y. Aug. 24, 2016).

The proposed form and method of notice satisfies all due process considerations and meets the requirements of Rule 23(e)(1) because it is reasonably calculated to effect actual notice to the Settlement Class. The parties' proposed notice to current and former participants is attached as Exhibits 3 and 4, respectively, to the Settlement Agreement. The notice will fully apprise Class Members of the existence of the lawsuit, the proposed settlement, and the information they need to make informed decisions about their rights, including: (i) the terms and operation of the settlement; (ii) the nature and extent of the release; (iii) the maximum attorneys' fees and costs that will be sought; (iv) the procedure and timing for objecting to the settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents and any modifications thereto will be posted.

The notice plan consists of multiple components designed to reach class members. First,

the notice will be sent by electronic email to all class members who have an email address known to Columbia University and/or the Plans' recordkeeper(s) and by first-class mail to the current or last known address of all class members for whom there is no email address on file or for whom emails bounced back to the Settlement Administrator shortly after entry of the order preliminarily approving the Settlement. In addition to the notice, Class Counsel will develop a dedicated website solely for the settlement, and a link to that website will appear on Class Counsel's website [www.uselaws.com]. The form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate.

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the settlement.

May 21, 2021

Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
Andrew D. Schlichter, Bar No. 4403267
Jerome J. Schlichter (*pro hac vice*)
Heather Lea (*pro hac vice*)
Joel D. Rohlf (*pro hac vice*)
Nathan H. Emmons (*pro hac vice*)
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Phone: (314) 621-6115
Fax: (314) 621-5934

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

By: /s/ Jerome J. Schlichter
*Counsel for Plaintiffs*

15