## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANDRA CATES, KELLY STUART, HARRY L. BROWN, OLGA S. CARR, PHYLLIS E. HULEN, DR. SAUL SILVERSTEIN, AND WILLIAM S. VALENTINE individually and as representatives of a class of participants and beneficiaries of the Retirement Plan for Officers of Columbia University, and the Columbia University Voluntary Retirement Savings Plan,<br><br>*Plaintiffs,*<br><br>   v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>*Defendant.* | No. 1:16-cv-06524-GBD<br><br>**DECLARATION OF JEROME J. SCHLICHTER IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CASE CONTRIBUTION AWARDS FOR CLASS REPRESENTATIVES** |

1.     I am the founding and managing partner of the law firm of Schlichter Bogard & Denton, LLP, Class Counsel for Plaintiffs in the above-referenced matter. This declaration is submitted in support of Plaintiffs' Motion for Attorneys' Fees and Expenses, and Case Contribution Awards for Class Representatives. I am familiar with the facts set forth below and able to testify to them.

2.     I received my Bachelor's degree in Business Administration from the University of Illinois in 1969, with honors, and was a James Scholar. I received my Juris Doctorate from the University of California at Los Angeles (UCLA) Law School in 1972, where I was an Associate Editor of UCLA Law Review. I am licensed to practice law in the states of Illinois, Missouri, and California and am admitted to practice before the Supreme Court of the United States, the

Second, Third, Fourth, Fifth, Seventh, Eighth and Ninth Circuit Courts of Appeals and numerous

U.S. District Courts. I have also been an Adjunct Professor teaching trial practice at Washington

University School of Law, and repeatedly selected by my peers for the list of The Best Lawyers

in America.

3.     Through over 40 years of practice, I have handled, on behalf of plaintiffs, substantial

personal injury, civil rights class actions, mass torts and class action fiduciary breach litigation

under the Employee Retirement Income Security Act (ERISA), on behalf of participants in large

401(k) and 403(b) plans. In 2014, I was ranked number 4 in a list of the 100 most influential

people nationally in the 401(k) industry in the industry publication 401(k) Wire. Examples of

class action cases I have successfully handled include: *Brown v. Terminal Railroad Association*,

a race discrimination case in the Southern District of Illinois on behalf of all African-American

and Hispanic employees at a railroad; *Mister v. Illinois Central Gulf Railroad*, 832 F.2d 1427

(7th Cir. 1987), a failure-to-hire class action brought on behalf of hundreds of African-American

applicants from East St. Louis, Illinois at a major railroad which was tried to conclusion and

successfully appealed to the Seventh Circuit Court of Appeals and finally concluded with more

than $10 million for the class over twelve years of litigation; *Wilfong v. Rent-A-Center*, No. 00-

680-DRH (S.D. Ill. 2002), a nationwide gender discrimination in employment case on behalf of

women, which was successfully settled for $47 million and substantial affirmative relief to the

class of thousands, after defeating the defendant's attempt to conduct a reverse auction.

4.     My firm has been named class counsel in many cases involving claims of fiduciary

breaches in large 401(k) and 403(b) plans. *See Sweda v. Univ. of Pennsylvania*, No. 16-4329,

2021 WL 2665722 (E.D. Pa. June 29, 2021); *Khan v. Bd. Of Directors of Pentegra Defined

Contribution Plan*, No. 20-7561, 2021 WL 663386 (S.D.N.Y. Feb. 19, 2021); *Vellali v. Yale*

2

*Univ.*, 333 F.R.D. 10 (D. Conn. 2019); *Munro v. Univ. of S. California*, No. 16-06191-VAP,

2019 WL 7842551 (C.D. Cal. Dec. 20, 2019); *Kelly v. Johns Hopkins Univ.*, No. 16-2835, ECF

No. 87 (D. Md. Aug. 16, 2019); *Bell v. Pension Cmte. of ATH Holding Co.*, No. 15-2062, 2018

WL 4385025 (S.D. Ind. Sept. 14, 2018); *Cunningham v. Cornell Univ.*, No. 16-6525, ECF No.

219 (S.D.N.Y. Jan. 22, 2019); *Cassell v. Vanderbilt Univ.*, No. 16-2086-WDC, 2018 WL

5264640 (M.D. Tenn. Oct. 23, 2018); *Cates v. Trustees of Columbia Univ.*, No. 16-6524, ECF

No. 218 (S.D.N.Y. Nov. 8, 2018); *Clark v. Duke Univ.*, No. 16-1044-CCE, 2018 WL 1801946

(M.D.N.C. Apr. 13, 2018); *Sacerdote v. N.Y. Univ.*, No. 16-6284-KBF, 2018 WL 840364

(S.D.N.Y. Feb. 13, 2018); *Ramos v. Banner Health*, 325 F.R.D. 382 (D. Colo. 2018); *Troudt v.

Oracle Corp.*, 325 F.R.D. 373 (D. Colo. 2018), *amended*, No. 16-00175-REB-SKC, 2019 WL

1006019 (D. Colo. Mar. 1, 2019); *Pledger v. Reliance Trust*, No. 15-4444, ECF No. 101 (N.D.

Ga. Nov. 7, 2017); *Marshall v. Northrop Grumman Corp.*, No. 16-06794-AB-JCX, 2017 WL

6888281 (C.D. Cal. Nov. 2, 2017); *Sims v. BB & T Corp.*, No. 15-732, 2017 WL 3730552

(M.D.N.C. Aug. 28, 2017*)*; *Gordan v. Massachusetts Mutual Life Insurance Co.*, No. 13-30184,

ECF No. 112 (D. Mass. June 22, 2016); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL

6769054 (M.D.N.C. May 18, 2016); *Krueger v. Ameriprise Financial*, Inc., 304. F.R.D. 559 (D.

Minn. 2014); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388 (S.D.Ill. 2012), and *Abbott*, No.

06-701, ECF No. 403 (S.D. Ill. Aug. 1, 2014); *Beesley v. Int'l Paper Co.*, No. 06-703, ECF No.

240 (S.D. Ill. Sept. 30, 2008), and ECF No. 543 (S.D. Ill. Oct. 10, 2013); *Nolte v. Cigna Corp.*,

No. 07-2046, 2013 WL 3586645 (C.D. Ill. July 3, 2013); *Spano v. Boeing Co.*, 294 F.R.D. 114

(S.D. Ill. 2013); *George v. Kraft Foods Global Inc.*, No. 08-3799, 2012 U.S.Dist.LEXIS 26536

(N.D. Ill. Feb. 29, 2012) (*George II*); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-

06213-MMM-JCX, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011*)*; *Will v. Gen. Dynamics Corp.*,

No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010); *Martin v. Caterpillar Inc.*, No. 07-1009, ECF No. 173 (C.D. Ill. April 21, 2010); *Tibble v. Edison Int'l*, No. 07-5359-SVW-AGRX, 2009 WL 6764541 (C.D. Cal. June 30, 2009); *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338 (N.D. Ill. 2008) (*George I*); *Taylor v. United Techs. Corp.*, No. 06-1494-WWE, 2008 WL 2333120 (D. Conn. June 3, 2008); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008); *Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007); *Loomis v. Exelon Corp.*, No. 06-4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007). A brief biography of my firm, including summaries of our professional experience, is attached as Exhibit A.

5.     Federal judges across the country have noted my and my firm's work in plaintiffs' class action cases. U.S. District Judge James Foreman, in the *Mister* case, *supra*, speaking of my efforts, stated:

> This Court is unaware of any comparable achievement of public good by a private lawyer in the face of such obstacles and enormous demand of resources and finance.

Order on Attorney's Fees, *Mister v. Illinois Central Gulf R.R.*, No. 81-3006 (S.D. Ill. 1993).

6.     U.S. District Judge David R. Herndon wrote, regarding my and the firm's handling of the *Wilfong* class action, *supra*:

> Class counsel has appeared in this court and has been known to this Court for approximately 20 years. This Court finds that Mr. Schlichter's experience, reputation and ability are of the highest caliber. Mr. Schlichter is known well to the District Court Judge and this Court agrees with Judge Foreman's review of Mr. Schlichter's experience, reputation and ability.

Order on Attorney's Fees, *Wilfong v. Rent-A-Center*, No. 0068-DRH (S.D. Ill. 2002). Judge Herndon also noted in *Wilfong* that I "performed the role of a 'private attorney general' contemplated under the common fund doctrine, a role viewed with great favor in this Court" and described my action as "an example of advocacy at its highest and noblest purpose." *Id.*

4

7.      In *Beesley v. International Paper*, a 401(k) ERISA excessive fee case that resulted in a

settlement of $30 million plus substantial affirmative relief following seven years of litigation,

Judge David Herndon observed: "Litigating this case against formidable defendants and their

sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and

determination. Schlichter Bogard & Denton and lead attorney Jerome Schlichter's diligence and

perseverance, while risking vast amounts of time and money, reflect the finest attributes of a

private attorney general." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at 2 (S.D.Ill.

Jan. 31, 2014). Similarly, in *Abbot v. Lockheed Martin*, a 401(k) excessive fee case that took

over nine years, Honorable Chief Judge Reagan observed that "[t]he law firm Schlichter, Bogard

& Denton has had a humongous impact over the entire 401(k) industry, which has benefitted

employees and retirees throughout the country by bringing sweeping changes to fiduciary

practices." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at 3 (S.D. Ill. July

17, 2015).

8.      In *Will v. General Dynamics*, another ERISA excessive fee case, U.S. District Judge

Patrick Murphy found that litigating the case and achieving a successful result for the class

"required Class Counsel to be of the highest caliber and committed to the interests of the

participants and beneficiaries of the General Dynamics 401(k) Plans." *Will v. General Dynamics

Corp.*, No. 06-698, 2010 WL 4818174, at 2 (S.D. Ill. Nov. 22, 2010).

9.      U.S. District Judge Baker, in *Nolte v. Cigna*, commented that Schlichter Bogard &

Denton is the "preeminent firm in 401(k) fee litigation" and has "persevered in the face of the

enormous risks of representing employees and retirees in this area." *Nolte v. Cigna Corp.,* No.

07-2046, 2013 WL 12242015, at 2 (C.D. Ill. Oct. 15, 2013). Judge McDade of the Central

District of Illinois, again speaking of the firm, observed that achieving a favorable result in this

type of case required extraordinary efforts because the "litigation entails complicated ERISA claims." *Martin v. Caterpillar, Inc*., No. 07-1009, 2010 WL 3210448, at *2 (C.D.Ill. Aug. 12, 2010).

10.   In approving a settlement including $32 million plus significant affirmative relief, in a 403(b) excessive fee case, Chief Judge William Osteen in *Kruger v. Novant Health, Inc.*, No. 14-208, ECF No. 61 at 7–8 (M.D.N.C. Sept. 29, 2016) found that "Class Counsel's efforts have not only resulted in a significant monetary award to the class but have also brought improvement to the manner in which the Plans are operated and managed which will result in participants and retirees receiving significant savings[.]"

11.   In awarding attorney's fees after the first 401(k) excessive fee trial in the history of the United States, Judge Nanette Laughrey concluded that "Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012). Following remand, the district court again awarded Plaintiffs' attorney's fees, emphasizing the significant contribution Plaintiffs' attorneys have made to ERISA litigation, including educating the Department of Labor and federal courts about the importance of monitoring fees in retirement plans:

> Of special importance is the significant, national contribution made by the Plaintiffs whose litigation clarified ERISA standards in the context of investment fees. The litigation educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations.

*Tussey v. ABB, Inc.*, No. 06-4305, 2015 WL 8485265, at *2 (W.D. Mo. Dec. 9, 2015).

12.   After recognizing "their persistence and skill of their attorneys," Judge Nancy Rosenstengel similarly noted:

> Class Counsel has been committed to the interests of the participants and beneficiaries of Boeing's 401(k) plan in pursuing this case and several other 401(k)

fee cases of first impression. The law firm Schlichter, Bogard & Denton has significantly improved 401(k) plans across the country by bringing cases such as this one[.]

*Spano*, 2016 WL 3791123, at *3.

13.   Recently, Judge Catherine Eagles noted that "these [ERISA] cases require a high level of skill on behalf of plaintiffs to achieve any recovery." *Clark v. Duke*, No. 16-01044, ECF No. 165 at 6 (M.D.N.C. June 24, 2019). In approving attorneys' fees, Judge Eagles concluded that "Class Counsel has demonstrated diligence, skill, and determination in this matter and, more generally, in an area of law in which few attorneys and law firms are willing or capable of practicing." *Id.* at 7.

14.   Last year, Judge George L. Russell, III, in approving a fee of one third of a $14 million settlement in a similar case, noted that "Schlichter Bogard & Denton's work on behalf of participants in large 401(k) and 403(b) plans has significantly improved these plans, brought to light fiduciary misconduct that has detrimentally impacted the retirement savings of American workers, and dramatically brought down fees in defined contribution plans." *Kelly v. Johns Hopkins Univ.*, No. 16-2835-GLR, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020). Judge Russell continued, "[w]ithout the unique and unparalleled foresight for this novel area of litigation by Schlichter, Bogard & Denton, the class would not have obtained any recovery for the alleged fiduciary breaches that affected the Johns Hopkins University 403(b) plan for years prior." *Id.* at *4.

15.   Judge Blackburn of the District of Colorado wrote in last year that Class Counsel "have shown their ability by achieving the excellent result obtained for the class" and "admirably served as private attorneys general in this instance, fulfilling one of the purposes of ERISA." *Troudt*, No. 16-00175-REB-SKC (D. Col. July 10, 2020), ECF No. 236.

16.   I have also spoken on ERISA litigation breach of fiduciary duty claims at national ERISA seminars as well as other national bar seminars.

17.   In the decades of my private practice, I have never been reprimanded or otherwise disciplined with respect to any aspect of the practice of law.

18.   Since 2005, my firm and I have been investigating, preparing and handling, on behalf of plan participants, numerous cases against fiduciaries of large 401(k) plans alleging fiduciary breaches including excessive fees, conflicts of interests and prohibited transactions under ERISA.

19.   My firm filed the first ERISA breach of fiduciary duty cases for excessive fees in the history of ERISA in 2006.

20.   My firm has filed ERISA fiduciary breach class actions in numerous judicial districts throughout the United States, including districts within the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits.

21.   After close to a decade of handling excessive 401(k) fee cases, my firm and I began investigating similar claims for excessive fees and imprudent investments involving large 403(b) plans sponsored by private universities. This investigation was extensive, lasting well over one year prior to the filing of a 403(b) university plan lawsuit. My firm and I thoroughly researched legal and factual issues concerning 403(b) plans in general, as well as conducted specific analyses pertaining to each 403(b) plan under investigation. We also were assisted by experienced industry professionals knowledgeable about prudent fiduciary practices governing 403(b) plans, the market rate for 403(b) plan services, and other issues pertaining to the administration of 403(b) plans.

22.   Beginning in August 2016, after more than one year of diligently investigating potential fiduciary breach claims involving 403(b) plans, my firm expanded its national ERISA practice by filing excessive 403(b) fee cases against private universities. These lawsuits were similar to the 401(k) excessive fee cases previously handled by my firm. This lawsuit was one of a number of lawsuits that were filed in 2016 alleging breaches of fiduciary duty and prohibited transactions concerning excessive fees charged to 403(b) plan participants and imprudent investments included in their plans.

23.   No law firm had ever brought an excessive 401(k) or 403(b) case before my firm did, and no other law firm has brought the number of cases our firm has brought, including:

- the first two trials of excessive 401(k) fee cases;

- the first and only 401(k) case in the United States Supreme Court; and

- the first and only trial of a 403(b) excessive fee case.

24.   The first full trial of such a 401(k) case resulted in a judgment for the plaintiffs, affirmed in part by the Eighth Circuit. *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291 (W.D.Mo. Mar. 31, 2012), *aff'd in part, rev'd in part*, 746 F.3d 327 (8th Cir. 2014). As Judge Laughrey noted in that case, "[i]t is well established that complex ERISA litigation involves a national standard and special expertise. Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at 3 (W.D.Mo. Nov. 2, 2012)(citations omitted). That case involved two appeals, lasted twelve and a half years, and was only recently settled.

25.   In the second 401(k) excessive fee trial, *Tibble v. Edison Int'l,* the United States Supreme Court granted our petition for writ of certiorari in the first and only ERISA 401(k) excessive fee case taken by the Supreme Court. In a 9-0 unanimous decision, the Supreme Court

vacated the Ninth Circuit's affirmance of the summary judgment order and held that an ERISA fiduciary has a continuing duty to monitor plan investments and remove imprudent ones regardless of when they were added. *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015). This was a watershed and landmark decision in ERISA litigation. Sitting *en banc*, ten judges of the Ninth Circuit on remand unanimously vacated a Ninth Circuit panel decision and remanded to the district court to determine whether the defendants violated their continuing duty to monitor the 401(k) plan's investments, stating that "cost-conscious management is fundamental to prudence in the investment function." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–1198 (9th Cir. 2016) (citation omitted). Following remand, in August 2017, the plaintiffs obtained a judgment of $13.4 million in plan losses and investment opportunity. *Tibble,* No. 07-5359, 2017 WL 3523737 (C.D.Cal. Aug. 16, 2017); *Tibble,* ECF Nos. 570, 572.

26.    My firm also handled the first excessive fee 403(b) case in history to go to trial. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D.N.Y. 2018). That trial occurred in April 2018, and judgment was entered on July 31, 2018, finding in favor of New York University. The appeal is pending before the Second Circuit.

27.    Before my firm brought ERISA 401(k) or 403(b) excessive fee cases, virtually no firm was willing to bring such a case, and I know of no other firm that has made anything close to the financial and attorney commitment to such cases to this date. Given that no other private law firm or the Department of Labor brought these cases before my firm entered this space, the ERISA fiduciary breach actions brought by my firm were novel and certainly groundbreaking.

28.    Several of the 401(k) cases my office filed were dismissed, and the dismissals upheld by the Courts of Appeals. *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir.

2011). Others had summary judgment granted against the plaintiffs in whole or in part. *Kanawi v. Bechtel Corp.*, 590 F.Supp.2d 1213 (N.D. Cal. 2008); *Taylor v. United Techs. Corp.*, No. 06-3194, 2009 WL 535779 (D. Conn. Mar. 3, 2009), *aff'd*, 354 Fed. Appx. 525 (2d Cir. 2009); *George v. Kraft Foods Global, Inc.*, 684 F.Supp. 2d 992 (N.D. Ill. 2010), *rev'd in part*, 641 F.3d 786 (7th Cir. 2011); *Tibble v. Edison Int'l*, 639 F.Supp.2d 1074 (C.D. Cal. 2009), aff'd, 729 F.3d 1110 (9th Cir. 2013), *vacated*, 135 S. Ct. 1823 (2015), *aff'd on remand*, 820 F.3d 1041 (9th Cir. 2016).

29.   One of the 403(b) cases handled by my office also was dismissed, and the dismissal upheld on appeal. The Supreme Court has granted our office's certiorari petition in that case and will hear oral arguments in its upcoming term. *Divane v. Northwestern Univ.*, No. 16-8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018), *affirmed* 953 F.3d 980 (7th Cir. Mar. 25, 2020), *cert. granted* (U.S. July 2, 2021) (No. 19-1401).

30.   Prior to filing the *Cates* lawsuit in August 2016, my firm began researching the Columbia Plans, investigating claims, and consulting with experts in the field of 403(b) administration and investment management. The investigation began with obtaining and reviewing each of the Plans' Annual Reports since 2009 (Forms 5500), which are publicly available documents filed with the United States Department of Labor in which the Plan discloses its investment holdings and financial statements. Using this data, we conducted an extensive analysis of the Plans' administrative fees and investment performance based on our knowledge of industry practices.

31.   Prior to filing suit, my firm also analyzed documents obtained from the named plaintiffs and other material obtained from publicly available sources related to the administration of the Plans.

32.   As a practical matter, litigants such as named Plaintiffs Chandra Cates, Kelly Stuart, Harry L. Brown, Olga S. Carr, Phyllis E. Hulen, Dr. Saul Silverstein, and William S. Valentine could not afford to pursue litigation against well-funded fiduciaries of a multi-billion dollar 403(b) plans sponsored by a large employer such as Columbia in federal court on any basis other than a contingent fee. I know of no law firm in the United States, of the very few firms which would even consider handling such a case as this or that would handle any ERISA class action, with an expectation of anything but a percentage of the common fund created.

33.   The contingency fee agreements entered into between my firm and each of the named Plaintiffs in this case provide for our fee to be one-third of any recovery plus expenses. The plaintiffs in other ERISA fiduciary breach cases brought by my firm have also signed similar agreements calling for a one-third contingency fee plus expenses. I know of no firm in the country that accepts such cases for less than a one-third contingency fee.

34.   Prior to this lawsuit, my firm did not have a professional relationship with any of the Named Plaintiffs.

35.   These kinds of excessive fee cases involve tremendous risk, require review and analysis of thousands of documents, finding and obtaining opinions from expensive, unconflicted, consulting and testifying national experts in finance, investment management, fiduciary practices, and related fields, and are extremely hard fought and well-defended by national firms with ERISA expertise.

36.   A law firm that brings a putative class action such as this must be prepared to finance the case for years through a trial and appeals, all at substantial expense. This has been my experience in handling these types of cases. For example, in *Tussey v. ABB*, *supra,* seven experts testified at trial, and the two defendant groups therein had 15 or more lawyers present in the

courtroom throughout the month-long trial. In addition, all parties, including plaintiffs, had a technology team present throughout. In addition, our firm expended over $2,000,000 in out-of-pocket expenses by the conclusion of the trial therein and carried the expense without reimbursement for more than twelve years. That case continued after being tried almost ten years ago, followed by two appeals to the Eighth Circuit, and multiple remandments to the district court. *Tibble v. Edison Int'l*, *supra*, was also still pending until an appeal was decided in 2019, nearly 14 years after it was filed.

37.   Based on my experience, the market for experienced and competent lawyers willing to pursue ERISA excessive fee litigation is a national market, and the rate of 33 1/3% of any recovery, plus costs, is necessary to bring such cases. This is the rate that a qualified and experienced attorney would negotiate at the beginning of the litigation, and the rate found reasonable in similar ERISA fee cases in numerous federal district courts.

- *Pledger v. Reliance Tr. Co.*, No. 15-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021)

- *Henderson v. Emory University*, No. 16-2920, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020)

- *Marshall v. Northrop Grumman Corp.*, No. 16-6794, 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)

- *Troudt v. Oracle Corp*, No. 16-00175-REB-SKC, ECF No. 236 (D. Col. July 10, 2020)

- *Kelly v. Johns Hopkins Univ.*, No. 16-2835-GLR, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020)

- *Tussey v. ABB, Inc.,* No. 06-04305-NKL, ECF No. 869 (W.D. Mo. August 16, 2019);

- *Sims v. BB&T Corp.,* No. 15-1705, 2019 WL 1993519 (M.D.N.C. May 6, 2019);

- *Clark v. Duke*, No. 16-01044, ECF No. 166 (M.D.N.C. June 24, 2019);

- *Cassell v. Vanderbilt Univ.*, No. 16-02086, ECF No. 174 (M.D. Tenn. Oct. 22, 2019);

- *Bell v. Pension Comm. Of ATH Holding Co., LLC*, No. 15-02062, ECF No. 380 (S.D. Ind. Sept. 4, 2019);

- *Ramsey v. Philips,* No. 18-1099, ECF No. 27 (S.D. Ill. Oct. 15, 2018);

- *In re Northrop Grumman Corp. ERISA Litig.,* No. 06-6213, 2017 WL 9614818 (C.D.Cal. Oct. 24, 2017);

- *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016);

- *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016);

- *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016);

- *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D. Ill. July 17, 2015);

- *Krueger v. Ameriprise Financial Inc.*, No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015);

- *Beesley v. Int'l Paper Co.,* No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014);

- *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015 (C.D. Ill Oct. 15, 2013);

- *George v. Kraft Foods Global*, No. 07-1713, 2012 WL 13089487 (N.D. Ill. June 26, 2012);

- *Will v. General Dynamics*, No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010); and

- *Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 WL 11614985 (C.D. Ill. Sept. 10, 2010).

38.   Long-term commitment of time and resources is needed if plan participants are to receive full compensation for their losses in such cases. Because my firm has committed to doing this in each case we pursue, it is my opinion that defendants take into account this firm's long-term commitment to these cases in assessing their costs and the likelihood of success.

39.   My firm has devoted over 13,188 hours of attorney and 2,288 hours of non-attorney time to date to prosecute this case on behalf of Plan participants and beneficiaries.[1] Because my

---

[1] This total excludes time spent on this motion.

firm works solely on a contingency fee basis, and there is a limited number of active cases it can handle at any given point, the decision to pursue this class action and commit significant resources to obtain a successful recovery on behalf of the class through potentially years of litigation impacted the firm's ability to handle other class actions or pursue other less risky matters.

40.   By my firm obtaining this settlement for the Class without further delay, the Class members will benefit by not only avoiding risk but also avoiding what would have been substantial costs and delay for trial and potential appeals. In addition, they will benefit by being able to invest their recoveries and benefit from the earnings much earlier than if there had been years of delay.

41.   Schlichter Bogard & Denton does not bill clients on an hourly basis. In July 2020, based on the national market for complex ERISA fiduciary breach litigation, the following hourly rates for my firm were approved: $1,060 per-hour for attorneys with at least 25 years of experience, $900 per-hour for attorneys with 15–24 years of experience, $650 per-hour for attorneys with 5–14 years of experience, $490 per-hour for attorneys with 2–4 years of experience, and $330 per-hour for paralegals and law clerks. *Troudt*, No. 16-00175-REB-SKC, ECF No. 236 (D. Col. July 10, 2020).

42.   These rates for our firm have been approved by numerous courts across the country in the last two years. *See id.*; *Pledger*, 2021 WL 225349; *Henderson*, 2020 WL 9848978; *Marshall*, 2020 WL 5668935; *Kelly*, 2020 WL 434473, at *3; *Tussey*, ECF No. 869; *Sims*, 2019 WL 1993519, at *3; *Clark*, ECF No. 166 ; *Cassell*, No. 16-02086, ECF No. 174 (M.D. Tenn. Oct. 22, 2019); *Bell*, ECF No. 380.

43.   These rates were brought up to date based on 2016 hourly rates for Schlichter Bogard & Denton that were previously approved. *Kruger*, 2016 WL 6769066 at 4. The 2016 hourly rates were previously approved by the Southern District of Illinois in *Spano,* 2016 WL 3791123 at 3. Those rates were: $998 per-hour for attorneys with at least 25 years of experience, $850 per-hour for attorneys with 15–24 years of experience, $612 per-hour for attorneys with 5–14 years of experience, $460 per-hour for attorneys with 2–4 years of experience, $309 per-hour for paralegals and law clerks, and $190 per-hour for legal assistants.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on August 13, 2021, in St. Louis, Missouri.

/s/ Jerome J. Schlichter
Jerome J. Schlichter